IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

FILED
June 15, 2006

CLERK, U.S. DISTRICT COURT

| | | |
|---|---|---|
| SHANNON LARREA MARKETIC | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| vs. | § | Civil Action 7:05-cv-131-R |
| | § | |
| U.S. BANK NATIONAL ASSOC., | § | |
| | § | |
| **Defendant.** | § | |

## MEMORANDUM OPINION AND ORDER

Now before the Court is defendant U.S. Bank National Association's Motion for Partial Summary Judgment (Dkt. No. 27).  For the reasons explained below, the Court **GRANTS, IN PART,** and **DENIES, IN PART,** Defendant's motion.

### I. BACKGROUND

In November 2001, plaintiff Sharon Larhea Marketic obtained a $195,000 home equity loan from New Century Mortgage Corp. ("New Century").  As security for the loan, New Century obtained a first lien mortgage on her property – 10 acres of land located in Montague County, Texas.  Another company, Premier USA Mortgage, Inc. ("Premier USA"), served as the Marketic's broker on the deal.

To consummate the transaction, Marketic and New Century executed three documents: (1) a promissory note evincing Marketic's indebtedness to New Century (the "Note"); (2) a home equity affidavit signed by Marketic which represented that the property to be mortgaged was in fact homestead property and was not designated for agricultural use under the relevant statutes governing property taxes (the "Home Equity Affidavit"); and (3) a security instrument creating a first lien on

1

the property referred to in the home equity affidavit (the "Security Instrument").  The security instrument authorized the Noteholder to accelerate Marketic's indebtedness and foreclose upon the property if she defaulted upon the note and failed to cure the default within a reasonable time. Plaintiff also claims that she received a Truth-in-Lending Disclosure Statement and a HUD-1 Settlement Statement at the time of closing.

On November 16, 2001, the Note and the Security Instrument were subsequently assigned to defendant U.S. Bank National Association ("Defendant" or "US Bank").  (Mot.App. 33).  By March 2004, Marketic had defaulted on the Note by failing to make several monthly payments.  As a result, Defendant accelerated her debt as contemplated by the Security Instrument.  Plaintiff failed to cure her default or reinstate her debt.

Plaintiff has filed this lawsuit seeking declaratory and injunctive relief to prevent Defendant from foreclosing on her property.  She alleges that the home equity loan documents that New Century provided to her did not comply with several requirements of section 50(a)(6) of Article XVI of the Texas Constitution, which relates to home equity liens on homestead property.  Martketic also alleges that, as a matter of state constitutional law, Defendant cannot foreclose upon her property because it is designated for agricultural use under the relevant property tax statutes.  She contends that her property was originally designated for agricultural use but that the designation "was changed prior to closing... at the instance and request of Premier USA[] and, to [her] understanding, New Century [] as a condition of making the loan."  (Pl.'s Ex. B; Marketic Decl. ¶¶4-5).  Marketic also seeks damages against US Bank for breach of contract; the Texas Deceptive Trade Practices Act, Tex. Bus. & Comm. Code §§17.41 *et seq*.; the Truth-in-Lending Act, 15 U.S.C. §§1601 *et seq*.; the Texas Debt Collection Act, Tex. Fin. Code Ann. §§392 *et seq*.; the federal Fair Debt Collection Act,

15 U.S.C. §§1692 *et seq.*; the Real Estate Settlement Procedures Act, 12 U.S.C. §§2601 *et seq.*; and

constructive fraud.

Defendant has counterclaimed for common law and statutory fraud based on Marketic's

representation that the property was not designated for agricultural use.  It seeks an order allowing

it to foreclose on the property.  Defendant has now moved for summary judgment on all of

Plaintiff's claims except her claims under the Truth In Lending Act and the Real Estate Settlement

Procedures Act.

## II. ANALYSIS

### A.  Summary Judgment Standard

Summary judgment under Rule 56(c) of the Federal Rules of Civil Procedure is appropriate

when there is no genuine issue as to any material fact in the case and the moving party is entitled

to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317,

322, (1986); *Melton v. Teachers Ins. & Annuity Ass'n of Am.*, 114 F.3d 557, 559 (5th Cir. 1997).

The party moving for summary judgment bears the initial burden of identifying those

portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together

with affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.

*See Celotex*, 477 U.S. at 323; *Calbillo v. Cavender Oldsmobile, Inc.*, 288 F.3d 721, 725 (5th Cir.

2002).  Where the non-movant bears the burden of proof on a claim upon which summary judgment

is sought, the movant may also discharge its initial burden by showing that there is an absence of

evidence to support the nonmoving party's case.  *See Celotex*, 477 U.S. at 325.  Once the movant

has met its initial burden, the non-movant must set forth specific facts, by affidavits or otherwise,

showing that there is a genuine issue for trial.  *See Matsushita Elec. Indus. Co. v. Zenith Radio*

3

*Corp.*, 475 U.S. 574, 587 (1986); *Edwards v. Your Credit, Inc.*, 148 F.3d 427, 431-32 (5th Cir. 1998). Summary judgment will be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

When weighing the evidence on a motion for summary judgment, the court must decide all reasonable doubts and inferences in the light most favorable to the non-movant. *See Hotard v. State Farm Fire & Cas. Co.*, 286 F.3d 814, 817 (5th Cir. 2002); *Walker v. Sears, Roebuck & Co.*, 853 F.2d 355, 358 (5th Cir. 1988). The court cannot make a credibility determination in light of conflicting evidence or competing inferences. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). As long as there appears to be some support for the disputed allegations such that "reasonable minds could differ as to the import of the evidence," the motion for summary judgment must be denied. *Id.* at 250.

**B.** **Validity of the Lien under Article XVI, Section 50(a) of the Texas Constitution**

Section 50 of Article XVI of the Texas Constitution generally protects a homestead from foreclosure (i.e., a "forced sale") for the payment of debts. Tex. Const. art. XVI, §50(a) (Vernon Supp. 2005). In 1997, the Texas Constitution was amended to expand the types of liens that a lender could place against homestead property with the homeowner's consent. *Doody v. Ameriquest Mort. Co.*, 49 S.W.3d 342, 343 (Tex. 2001). Currently, section 50(a) of Article XVI of the Texas Constitution sets forth eight types of loans or extensions of credit that may be validly secured by a borrower's homestead. *See* Tex. Const. art. XVI, §§50(a)(1)-(8).

One of the 1997 amendments to §50 – subsection (a)(6) – permitted home equity lending against homestead property. *See Doody*, 49 S.W.3d at 343. In order for a home equity lien to be

4

valid, the home equity loan must comply with the numerous requirements set forth in subsections (A)-(Q) of section 50(a)(6). Those provisions detail the terms and conditions that may be placed on such loans and list the rights and obligations of borrowers and home-equity lenders. *See* Tex. Const. art. XVI, §§50(a)(6)(A)-(Q).[1] Marketic has challenged the validity of US Bank's lien on her home under two of those provisions – subsections (E) and (I) of §50(a)(6).

### 1.     Invalidity for Excessive Fees

Section 50(a)(6)(E) of Article XVI of the Texas Constitution prohibits foreclosure on property to pay a debt that arises from a line of credit that "requires the owner... to pay, in addition to any interest, fees to any person that are necessary to originate, evaluate, maintain, record, insure, or service the extension of credit that exceed[ed], in the aggregate, three percent of the original principal amount of the extension of credit..." Tex. Const. Art. XVI, §50(a)(6)(E). Plaintiff claims that the home equity loan that she received violated this 3% cap on fees and, therefore, cannot be subject to forced sale.

Defendant alleges that Plaintiff has provided no evidence that she paid fees in excess of $5,850 – 3% of the value of her loan. Rather, Defendant alleges that the HUD-1 Settlement Statement, which Plaintiff signed, states that she paid only $5,391.90 in total fees. (Def.'s Mot. Br. at 10, citing Mot.App. 60, line items 801, 1108, 1111-13, 1201, 1203, and 1303).

Notably absent from Defendant's calculation is a loan discount fee that Marketic paid in connection with obtaining the loan. The HUD-1 settlement statement submitted as evidence to the court reveals that Marketic paid an additional $3,900 in exchange for a 2% "Loan Discount." (Jt.

---

[1] The Court recognizes that "[t]he laws existing at the time a contract is made becomes a part of the contract and govern the transaction." *In re Adams*, 307 B.R. 549, 552 n. 1 (Bankr.N.D.Tex. 2004) (quoting *Wessely Energy Corp. v. Jennings*, 736 S.W.2d 624, 626 (Tex. 1987)). The relevant constitutional provisions in effect in 2001 remain unchanged.

App. 60, line 802). When added to the amounts that defendant has previously mentioned, Plaintiff contends that the aggregate amount paid exceeds the 3% constitutional limit on fees under §50(a)(6)(E). For that reason, she argues that the lien on her property is invalidated by §50(a)(6)(E) as a matter of state constitutional law. (Pl.'s Resp. Br. at 2-4).

The Court disagrees with Plaintiff's analysis. As Defendant correctly notes, the 3% percent cap on fees was not exceeded because the $3,900 that Marketic paid for discount points qualifies as "interest" under §50(a)(6)(E). In Texas, "discount points" that are charged to originate a home-equity loan are not "fees" related to the origination of the loan for purposes of §50(a)(6)(E), as long as the points are charged at the beginning of the loan term and were paid in consideration for a lower interest rate on the outstanding debt. *See Tarver v. Sebring Capital Credit Corp.*, 69 S.W.3d 708, 712-13 (Tex.App.–Waco 2002, no pet.) (holding that discount points do not qualify as "fees" because they are not charged to "originate, evaluate, maintain, record, insure, or service the extension of credit.") (citing Tex. Const. art. XVI, §50(a)(6)(E)). Instead, such payments qualify as "interest" for purposes of §50(a)(6)(E), even though both points and interest may be computed on the principal amount of the loan. *Id.*; *accord*, *Pelt v. U.S. Bank Trust Nat. Ass'n*, 2002 WL 31006139 *4 (N.D.Tex. 2002). For that reason, Plaintiff's challenge to the validity of the loan based on §50(a)(6)(E) fails as a matter of law, and Defendant is entitled to summary judgment on this issue.

### 2.    Invalidity for Agricultural Use

US Bank argues that Plaintiff has not provided any evidence to support her claim that her property cannot be foreclosed upon because it was (and is) designated for agricultural use under the relevant property tax laws. (Def.'s Mot. Br. at 10). In the alternative, Defendant claims that

Plaintiff should be estopped from alleging that the lien is invalid because she represented in her sworn Home Equity Affidavit that "the property was not designated for agricultural use by any statute" and did not disclose receiving any agricultural income on her loan application. (*Id*. at 11 & n.39, citing Mot.App. 52).

In response, Plaintiff asserts that her property was originally designated for agricultural use on the Montague County tax rolls, but that she subsequently changed the designation at the insistence of Premier USA and New Century in order to obtain the loan. (Marketic Decl. ¶¶4-5). Although Marketic admits that she changed the property tax designation to procure the loan, she claims that she "never made any attempt to hide the agricultural use of the [p]roperty [or] the improvements or livestock on it." (Marketic Decl. ¶5). Had any inspector or underwriter inspected the property, she argues, he or she would have known that the property was "plainly used" for non-dairy agricultural purposes. (Pl.'s Resp. Br. at 4). As further proof that New Century and others were on notice of the agricultural designation, she emphasizes that the appraisal report that was part of the closing documentation stated that most of the acreage on the property is open land, is located in a rural area, and mentions various items used in agriculture including animal "pens." (*See id*; Pl.'s Ex. A). This description of the property, she argues, would suggest that the land was used primarily for agriculture. (*See id*).

As to Defendant's argument that she should be estopped from challenging the loan, Marketic argues that she never made a false statement in any document or instrument signed at closing since at the time of closing, the property was not designated for agricultural use because she had already made the requested change to its designation. (Marketic Decl. ¶4). Since then, Marketic claims that she once again re-designated her land for agricultural use, which, she argues, now prevents it from

being foreclosed upon. (Marketic Decl. ¶5).   Additionally, Marketic argues that despite her representations, New Century and Premier's knowledge that the property was designated for agricultural use before extending the loan renders it immune from foreclosure.  (Pl.'s Resp. Br. at 4).

Subsection (I) of §50(a)(6) protects property "designated for agricultural use as provided by statutes governing property tax" from foreclosure to satisfy outstanding debt on a home equity loan. Tex. Const. art. XVI, §50(a)(6)(I).  The constitutional text states the following:

> Sec. 50 (a) The Homestead.... shall be, and is hereby protected from forced sale for the payment of all debts except for... (6) an extension of credit that:...[meets all constitutional requirements for a valid home equity loan in subsections (A)-(Q), including that it] (I) is not secured by homestead property designated for agricultural use as provided by the statutes governing property tax, unless such homestead property is used primarily for the production of milk.

Tex. Const. art. XVI, §50(a)(6)(A)-(Q) & (I).

The Court is now faced with conflicting interpretations of §50(a)(6)(I).  On the one hand, Marketic claims that the home equity lien is invalid because her home equity lender knew that her property was designated for agricultural use but insisted that she change the designation in order to obtain the loan, which she claims she did.  (Pl.'s Resp. Br. at 4).  She also alleges that the Defendant is now unable to foreclose on the loan because she subsequently re-designated her land for agricultural use.   (Id.).   In this regard, Marketic is asserting that the relevant agricultural "designation" under §50(a)(6)(I) is either the designation before the loan is extended – if known by the lender before extending the loan – or the designation at the time of foreclosure.  By contrast, Defendant argues that the only relevant designation under the amendment is the designation in effect at closing, when the lien is created.  (*See* Def.'s Reply at 8) ("Plaintiff has not provided any evidence that the Property was actually designated for agricultural use at the time of the loan.") (emphasis

removed).

In interpreting the Texas Constitution, Texas courts rely heavily on the literal text and must give effect to its plain language. *Republican Party of Texas v. Dietz*, 940 S.W.2d 86, 89 (Tex. 1997). It is a cardinal rule of construction that "all sections, words and phrases of an entire act must be considered together; every provision should be construed with every other portion to produce a harmonious whole; and one provision will not be given a meaning out of harmony or inconsistent with other provisions, although it might be susceptible of such construction if standing alone." *Black v. Am. Bankers Ins. Co.*, 478 S.W.2d 434, 437 (Tex. 1972).

The text of §50(a)(6)(I) is ambiguous because there is no temporal context for the verb phrases "not secured by" and "property designated for agricultural use." Therefore, Plaintiff and Defendant have both reasonably construed §50(a)(6)(I). The only difference between their interpretations is that they presuppose different times at which the property's designation will affect the validity of the lien.

For instance, Plaintiff interprets the provision to mean that the property's designation is relevant only at the time of the forced sale. In other words, a home equity lien may not be foreclosed upon if the property by which the lien is "secured" is "designated for agricultural use" at the time of the forced sale. When one considers subsection (I) in the context of §50(a)(6), one may reasonably conclude that the agricultural use designation is relevant only at the time of foreclosure. The phrase "shall be, and is hereby protected from forced sale" in §50(a) is the operative verb phrase upon "the homestead," the main subject of the entire constitutional provision. Subsection (I) is merely one of the various requirements that must be satisfied in order to force the sale of homestead property encumbered as security for a home equity loan. In this regard,

subsection (I) operates to protect "property designated for agricultural use" from forced sale, even if all the other requirements for a valid home equity loan under subsections (a)(6)(A)-(Q) have been met.  Furthermore, under Plaintiff's construction, a mere change in the property's "designation" may operate to prevent foreclosure upon a home equity lien that may have originally been properly secured by land that was not designated for agricultural use.

Yet, Defendant's construction of the text is also reasonable.  As Defendant claims, the text – particularly the phrase "secured by" – may also be interpreted to mean that a home equity lien will be valid and amenable to forced sale if the property was not "designated for agricultural use" when the lien was "secured" – i.e., at closing.  Under this reading, a change in property tax designation will *not* affect an initially valid home equity lien since the operative text is the phrase "is not secured by."  Considering §50(a) as a whole, one can see that subsection (a)(6) refers to an "extension of credit [that is]... (I) *not secured by*... property designated for agricultural use..."  Here, Defendant reads the text of subsection (I) as qualifying the *manner* in which the extension of credit – i.e., the home equity loan – is "secured."  If an otherwise valid home equity lien is initially "not secured by... property designated for agricultural use," then will not be protected from forced sale, regardless of a change in designation.  But if the extension of credit is "secured by" property that is designated for agricultural use when the loan is made, then the property is "protected" from forced sale.

After further study and reflection, the Court has found several reasons for believing that Plaintiff's interpretation is the correct interpretation of Art. XVI, §50(a)(6)(I).  The only court to have interpreted §50(a)(6)(I) has interpreted the phrase "property designated for agricultural use as provided by the statutes governing property tax" as referring to land assessed under both subchapter C of the Tax Code, entitled "Land Designated for Agricultural Use," and subchapter D of the Tax

Code entitled "Appraisal of Agricultural Land."  *See La Salle Bank National Ass'n v. White*, ---

S.W.3d---, 2006 WL 1152337, *2 (Tex.App.–San Antonio 2006, pet. for reh'g filed May 18, 2006).[2]

Under both of those statutory schemes, a property's designation may vary from year-to-year.[3]  The

legislature must have known this when drafting §50(a)(6)(I), and, therefore, the must have

contemplated that this situation might arise in the future.  Had the legislature intended for the

property tax designation to be relevant only at the time that "debt" underlying the foreclosure action

was incurred, it would have written such a condition into the constitutional text.

The legislative history of the 1997 home equity amendments to Art. XVI, §50 further

supports Marketic's interpretation of the provision.  In a case involving a different provision of the

1997 home equity amendments, the Texas Supreme Court approved of using legislative history to

interpret constitutional amendments to Art. XVI, §50(a) of the state constitution.  *See Stringer v.*

---

[2]In *White*, a case of first impression, the San Antonio Division of the Texas Court of Appeals affirmed a jury's verdict that invalidated home equity borrower's lien on land that was, in fact, designated for agricultural use before a loan was extended.  As here, the plaintiff-borrower sought a declaratory judgment to prevent foreclosure on his home.  In part, she alleged that the defendant-lender knew that the property was designated for agricultural use in 1999, but nevertheless executed a home equity loan secured by a lien on the property.  Evidence in the record suggested that the lender may have contacted the chief tax appraiser in the county to see if the property tax designation could be changed, but the lender was told that the tax designation could only be changed at the beginning of each year.  *Id.* at *4.  In any event, the lender extended the loan and sought to foreclose two years later after the borrower had defaulted on the note.  Although it is unclear from the opinion whether the property tax designation was eventually changed, the Court affirmed the jury's verdict which invalidated the lien in favor of the borrower.  The Court reasoned, "[b]ecause [plaintiff's] land was 'designated for agricultural use' under the relevant tax statutes, the Texas Constitution prohibited it from being used as security for a home equity loan."  *Id.*

Although the Court is mindful of its duty to defer to the state courts' interpretation of state law, *see Weeks v. Scott*, 55 F.3d 1059, 1063 (5th Cir. 1995), the *White* decision is the only case that known to interpret §50(a)(6)(I).  Where a state's highest court has not yet spoken on an issue, the Fifth Circuit has directed its district courts to look to the state's appellate courts for guidance unless the court is convinced that the highest court of the state would not adopt the appellate court's reasoning.  *See Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 564-65 (5th Cir.2004).  The Court finds no reason to believe that the Texas Supreme Court would rule differently than the appellate court in *White*.  However, the *White* opinion does not provide any guidance for interpreting §50(a)(6)(I) with respect to the situation currently before the Court.  The homestead property at issue in *White* was designated for agricultural use when it was initially encumbered.  The *White* opinion says nothing about whether a lender may permissibly persuade a property owner to remove an agricultural designation in order to obtain a home equity loan or whether it may foreclose upon homestead property that is designated for agricultural use at the time of foreclosure.

[3]*See, e.g., La Salle Bank National Ass'n*, ---S.W.3d---, 2006 WL 1152337, *2-3 (describing various provisions of the Texas Tax Code).

11

*Cendant Mortgage Corp.*, 23 S.W.3d 353, 355 (Tex. 2000) ("In construing a constitutional amendment, we may also consider its legislative history.") (citations omitted).

The legislative history to §50(a)(6) indicates that subsection (I) was intended to serve as a consumer protection provision. The Joint Resolution containing the 1997 home equity amendments that was originally introduced in the Texas House of Representatives – H.J.R. 31 – did not contain any exemption for property designated for agricultural use. *See* H.J. OF TEX., 75th Leg., R.S. 197 (1997). The exemption was later added by amendment on May 9, 1997. H.J. OF TEX., 75th Leg., R.S. 2172 (1997). When the bill was referred to the Senate, the chamber conducted a Bill Analysis upon the engrossed version of H.J.R. 31. The bill analysis stated that the House had amended the original version of the bill and had added "some consumer protections, such as... no agricultural liens..." SENATE RESEARCH CENTER, BILL ANALYSIS, Tex. H.J.R. 31, 75th Leg., R.S. (May 15, 1997) (stating the purpose of H.J.R. 31).[4]

After H.J.R.31 passed both chambers and was approved for the November ballot, the House Research Organization issued a report on the proposed constitutional amendments to Art. XVI. The report indicated that §50(a)(6)(I) was designed to exempt agricultural homesteads from serving as security for a home equity loan. *See* HOUSE RESEARCH ORGANIZATION, BILL ANALYSIS, Tex. H.J.R. 31, 75th Leg., R.S. (September 5, 1997).[5] In relevant part, the report stated the following:

> Most agricultural homesteads... should not be used as security for an equity loan, since agricultural property represents both a person's home and livelihood. Agricultural property has always been subject to unique treatment under the law, so

---

[4] Subsection (a)(6)(I) was further amended on May 24, 1997 to include a proviso regarding land used primarily for the production of milk. S.J. OF TEX., 75th Leg., R.S. 2880-90 (1997).

[5] The Texas Supreme Court has recognized a House Research Organization bill analysis as competent legislative history. *See Owens Corning v. Carter*, 997 S.W.2d 560, 580 (Tex. 1999), *cert. denied*, 528 U.S. 1005 (1999).

it would not be an aberration to exempt it from being used as collateral for equity loans. Allowing equity loans could result in farmers being forced to put up their homesteads as security for production loans, often used to tide farmers over until their crops produce income. In addition, farmers and ranchers can turn to numerous lending programs for funds in lieu of an equity loan.

*Id.* at 20-21.[6]

As mentioned previously, Defendant's entire argument for finding the lien to be valid presupposes that the only relevant property tax designation is the property's designation at the time the loan was executed.  (Def.'s Reply at 8).   Yet, nothing in the legislative history to §50(a)(6)(I) indicates that this was the Legislature's intent.   Rather, it is clear that the legislature intended to protect *all* agricultural homesteads from equity lending.   It would frustrate the legislature's intent for the Court to conclude otherwise.

For these reasons, the Court concludes that Defendant subtly misstates the language of the amendment by arguing that §50(a)(6)(I) states that a home equity loan "may not be secured by" property designated for agricultural use.  (*See* Def.'s Mot. Br. at 11).   The amendment does not prevent homestead property designated for agricultural use from being pledged as collateral for a home equity loan; it merely "protects" the homestead property from "forced sale."  *See* Tex. Const. art. XVI, §50(a)(6)(I).   In this regard, §50(a)(6)(I) places the risk on the lender to ensure that any homestead property that may be securitized as collateral for a loan will not be designated for agricultural use in the event of foreclosure.

---

[6] The same report explained the proviso for land used for the production of milk as follows: "Homesteads involved in milk production are somewhat unique... [since] [m]ost dairy farmers have a large amount of capital invested in their dairy operations, which are often less than 200 acres (the limit for a rural homestead), with a large concentration of animals in a small area, so their business equity is tied up in the rural homestead and thus cannot be tapped like other business equity."  HOUSE RESEARCH ORGANIZATION, BILL ANALYSIS, Tex. H.J.R. 31, 75th Leg., R.S. (September 5, 1997) at 21.   Therefore, "[e]quity loans would be especially important to dairy farmers faced with the current combination of reduced milk prices and high feed costs... [and] could help turn the tide for dairy operations in Texas, where in 1996, 10 percent of the dairies went out of business, the highest percentage for any state."  *Id.*

If the Court were to indulge Defendant's argument, it would essentially be rewriting §50(a)(6)(I) to include an additional proviso that would permit foreclosure upon homesteads that, for whatever reason, are not designated for agricultural use at the time that the home equity lien arises but that have been subsequently re-designated for agricultural use at the time of foreclosure. This Court – a federal court – is especially reluctant to rewrite the language of §50(a)(6)(I) in a manner that would frustrate the Texas Legislature's clear intent in adding this limited protection for agricultural homesteads in home equity lending.

Moreover, interpreting §50(a)(6)(I) in the manner that Marketic proposes does not alter or damage the language of the provision and is consistent with its overall emphasis on protecting agricultural homesteads from the risks associated with home equity lending. Furthermore, because this Court is a federal court, its interpretation of §50(a)(6)(I) on this narrow issue of law is not binding precedent in the Texas state courts.[7]  For these reasons, the Court finds that Marketic's property, if subsequently re-designated for agricultural use as alleged in her affidavit, is "protected" from forced sale under §50(a)(6)(I), regardless of how the property was designated when she incurred the "debt."

Because Marketic has presented evidence that the property is currently designated for agricultural use, the Court finds that a genuine material issue of fact remains on whether the land subject to US Bank's lien qualifies as land that is designated for agricultural use and is therefore

---

[7]Because federal jurisdiction is predicated on both a federal question and diversity of the parties, the Court was unable to remand the case to the state courts for determination.  (*See* Dkt No. 1) (notice of removal). Additionally, the Texas Supreme Court does not permit federal district courts to certify state constitutional questions, which would have been this Court's preferred method of resolving this issue of state constitutional law.  *See* Tex. R. App. P. 58.1(a) ("The Supreme Court of Texas may answer questions of law certified to it by any federal *appellate* court if the certifying court is presented with determinative questions of Texas law having no controlling Supreme Court precedent.") (emphasis added).

immune from foreclosure.  Accordingly, the Court denies Defendant's motion for summary judgment on this issue.

The Court also finds that Defendant is not entitled to summary judgment on its claim in the alternative that Plaintiff should be estopped from claiming that the land is now designated for agricultural use.  To properly raise the defense of equitable estoppel in Texas, one must show (1) a false representation or concealment of material facts; (2) made with knowledge, actual or constructive, of those facts; (3) with the intention that it should be acted on; (4) to a party without knowledge *or means of obtaining knowledge* of the facts; (5) who detrimentally relies on the representations.  *See Johnson & Higgins, Inc. v. Kenneco Energy*, 962 S.W.2d 507, 515-16 (Tex. 1998).  First, assuming the truth of Marketic's declaration, she did not misrepresent the designation of the property since, at the time, it was actually not designated for agricultural use.  Second, Defendant cannot show that as a matter of law that it did not have the means of knowing that Plaintiff's land was being used for agricultural purposes and was so designated or would be so designated at the time of possible foreclosure.[8]  For these reasons, the Court believes that genuine issues of material fact remain on Defendant's estoppel claim, which renders summary judgment inappropriate.

### C.      Breach of Contract

Defendant has moved for summary judgment on Plaintiff's claim that it breached the security

---

[8]The Texas Supreme Court has previously ruled that a borrower's representations to a lender regarding homestead property do not affect the constitutional validity of a lien that may arise therefrom.  In *Lincoln v. Bennett*, 156 S.W.2d 504, 506 (Tex. 1941), the Court stated:

> If property be homestead in fact and law, lenders must understand that liens cannot be fixed upon it, and that declarations of husband and wife to the contrary, however made, must not be relied upon.  They must further understand that no designation of homestead, contrary to fact will enable parties to evade the law and [e]ncumber homesteads with liens forbidden by the constitution.

*Id.* (citation omitted).

agreement by seeking to foreclose on an invalid lien. Defendant contends that it is entitled to summary judgment this claim because the lien was not invalid as alleged. Because the Court has already found that a genuine issue of material fact exists on whether the lien is invalidated by §50(a)(6)(I) of Article XVI the Texas Constitution, Defendant has not shown valid grounds for summary judgment on this claim. Therefore, its motion for summary judgment on Plaintiff's breach of contract claim is denied.

### D.    Texas Debt Collection Act

Defendant also moves for summary judgment on Plaintiff's claims under the Texas Debt Collection Act ("TDCA"). In her complaint, Marketic claims that Defendant violated the TDCA, in part, because it "threatened to take an action prohibited by law" by attempting to foreclose on a constitutionally invalid home equity loan. (First Am. Compl. ¶26A, citing Tex. Fin. Code §392.301(a)(8)). Defendant claims that it is entitled to summary judgment because the lien was not invalid as alleged. In light of the analysis above in part II.B.2, the Court finds that a genuine issue of material fact exists on whether Defendant has attempted to foreclose on property that is designated for agricultural use as specified under §50(a)(6)(I) of Article XVI of the Texas Constitution. For that reason, Defendant is not entitled to summary judgment on Plaintiff's TDCA claim.

### E.    Fair Debt Collection Practices Act

Plaintiff has alleged that US Bank violated the Fair Debt Collection Practices Act ("FDCPA"), codified at 15 U.S.C. §§1692 *et seq*. by threatening to foreclose on a constitutionally invalid lien and by engaging in other "unfair or unconscionable means" to collect on its debt. (First Am. Compl. ¶¶20-25). The FDCPA prohibits "debt collectors" – as defined under the statute – from

16

making false or misleading representations and from engaging in various abusive and unfair practices. *See* 15 U.S.C. §§1692 *et seq.*; *Heintz v. Jenkins*, 514 U.S. 291, 292 (1995). By enacting the FDCPA, Congress intended "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. §1692(a).

In relevant part, the FDCPA defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business *the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.*" 15 U.S.C. § 1692a(6) (emphasis added). Therefore, the FDCPA applies only to persons whose primary business is debt collection, who regularly collect debts for others, or who use another person's name to collect debts. *See Sweet v. Wachovia Bank and Trust Co., N.A.*, 2004 WL 1238180 *2 (N.D.Tex. 2004).

US Bank contends that "[a]s a national banking concern" it cannot be found liable under the FDCPA since "[its] principal business activity is not debt collection." (Def.'s Mot. Br. at 15-16). The Court agrees. US Bank's principal business activity is not debt collection, and, even if the company were to meet the statutory definition of a debt collector, it would nevertheless qualify for the statutory exclusion from liability found at 15 U.S.C. §1692a(6)(A) for creditors who attempt to collect debts owed to them while using their own names. *See Sweet*, 2004 WL 1238180 *2 n.1; *see also*, *Perry v. Stewart Title Co.*, 756 F.2d 1197 (5th Cir.1985), *modified on other grounds*, 761 F.2d 237 (5th Cir. 1985). Because Plaintiff claims under the FDCPA fail as a matter of law, the Court finds that US Bank is entitled to summary judgment on those claims.

### F.      Texas Deceptive Trade Practices Act

The Texas Deceptive Trade Practices Act ("DTPA") grants "consumers" a cause of action for false, misleading, or deceptive acts or practices.  *See* Tex. Bus.& Com. Code §17.50(a)(1).  In relevant part, the DTPA defines a "consumer" as "an individual... who seeks or acquires by purchase or lease, any goods or services."  Tex. Bus.& Com.Code §17.45(4); *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 649 (Tex. 1996).  Under the DTPA, the issue of consumers status is a question of law for the court to decide.  *Grant-Brooks v. WMC Mortgage Corp.*, 2003 WL 23119157 *7 (N.D.Tex. 2003) (citing *Lukasik v. San Antonio Blue Haven Pools, Inc.*, 21 S.W.3d 394, 401 (Tex.App.– San Antonio 2000, no pet.).

Defendant alleges that Plaintiff's claims under the DTPA must fail because she cannot show that she was a "consumer" under the statute.  (Def.'s Mot. Br. at 17-18).  The company argues that the purchase of intangible property rights like a home equity loan is not considered a purchase of "goods or services."  (*Id.*). In response, Plaintiff argues that §392.404 of the Texas Finance Code states that a violation of the TDCA also establishes a violation of the DTPA.   For that reason, she argues that Defendants violated both the TDCA and the DTPA by, among other things, threatening to foreclose on an allegedly invalid lien. (Pl.'s Resp. Br. at 5).

Plaintiff is correct to state that the DTPA tie-in statute, §17.50(h) of the Business & Commerce Code, grants a private right of action under the DTPA to a claimant seeking to recover under the TDCA.  *See* Tex. Bus.& Com.Code §17.50(h); Tex. Fin. Code §392.404.  However, Plaintiff fails to recognize that Tex. Bus. & Com. Code §17.50(h) does not exempt claimants from showing that they qualify as a "consumer" under Tex. Bus. & Com. Code §17.45(4).  In all cases, a plaintiff must qualify as a "consumer" in order to have standing to bring an action under the

DTPA. *Mendoza v. American Nat'l Ins. Co.*, 932 S.W.2d 605, 608 (Tex.App.–San Antonio 1996, no writ).

Consequently, the Court finds that Marketic does not qualify as a DTPA "consumer" and, therefore, cannot state a claim under the statute. The purchase of intangible property rights is generally not considered a purchase of goods or services under the DTPA. *See Hendricks v. Thornton*, 973 S.W.2d 348, 356 (Tex.App.–Beaumont 1998, pet. denied). In this regard, merely obtaining a loan or an extension of credit does not qualify one as a "consumer." *See La Sara Grain Co. v. First Nat'l Bank*, 673 S.W.2d 558, 567 (Tex. 1984); *Riverside Nat'l Bank v. Lewis*, 603 S.W.2d 169, 174 (Tex. 1980); *Maginn v. Norwest Mortgage Co.*, 919 S.W.2d 164, 166 (Tex.App.–Austin 1996, no writ). In fact, another judge of this court has already found that one who obtains a home equity loan does not obtain a "good" or a "service" to qualify as a consumer under the DTPA. *Grant-Brooks v. Wilshire Credit Corp.*, 2004 WL 1194462 *5 (N.D.Tex. 2004). Consequently, Plaintiff's DTPA claim fails as a matter of law.

### G.    Constructive Fraud

Defendant has also moved for summary judgment on Plaintiff's constructive fraud claim. Under Texas law, "constructive fraud is the breach of a legal or equitable duty which the law declares fraudulent because it violates a fiduciary relationship." *Jean v. Tyson-Jean*, 118 S.W.3d 1, 9 (Tex.App.–Houston [14th Dist.] 2003, no pet.) (citing *Archer v. Griffith*, 390 S.W.2d 735, 740 (Tex. 1964)).

As authority for claiming that New Century owed her a fiduciary duty, Marketic cites case law which suggests that a fiduciary relationship exists between a borrower and a loan broker. (Pl.'s Resp. Br. at 8, citing *Kelly v. Gaines*, 181 S.W.3d 394 (Tex.App.–Waco 2005, pet filed)). This

19

argument, if true, would only apply to Premier, not New Century.

To the extent that Marketic has asked the Court to find that a fiduciary duty or other special relationship exists or should be found to exist between Marketic and New Century – i.e., mortgagor and mortgagee – the Court declines to do so.  As Defendant correctly notes, a fiduciary relationship does not exist between a mortgagor and a mortgagee in Texas.  (Def.'s Reply at 12, citing, *inter alia*, *FDIC v. Coleman*, 795 S.W.2d 706, 708-09 (Tex. 1990)).  Additionally, the Texas Supreme Court has explained that there is no general duty of good faith and fair dealing in ordinary, arms-length commercial transactions in Texas.  *See Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 52 (Tex.1998).  Therefore, Defendant is entitled to summary judgment on Marketic's constructive fraud claim.

### H.      US Bank's Counterclaim for Common Law Fraud

In the event that the Court finds that the property may have been designated for agricultural use in violation of the state constitution, Defendant has moved for summary judgment on its counterclaim for common law fraud.  (Def.'s Mot. Br. at 22).  Defendant argues that Plaintiff committed fraud upon New Century by misrepresenting that the property was not designated for agricultural use.  (*Id*.).

To recover for common law fraud in Texas, one must show that: (1) a material representation was made; (2) the representation was false; (3) the speaker knew that the representation was false or made it recklessly without any knowledge of the truth; (4) the speaker intended for the other party to act upon the representation; (5) the other party justifiably relied on the representation; and (6) the other party suffered injury as a result.  *Formosa Plastics Corp. v. Presidio Engrs. & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex.1998).  After reviewing the evidence submitted in conjunction with

Defendant's motion, the Court finds that a material issue of genuine fact exists as to whether Marketic made a false representation of fact and, if so, whether the Defendant justifiably relied on the representation.

As mentioned previously in §II.B.2, Marketic claims that she did not make a false representation of fact when she signed the Home Equity Affidavit because, at the time of signing, the land was no longer designated for agricultural use. (Marketic Decl. ¶4).  Since closing, however, she claims that her land has been re-designated for agricultural use, which, she argues, prevents it from being foreclosed upon. (Marketic Decl. ¶5).  Additionally, there is evidence in the record that suggests that Defendant knew or may have otherwise known that Marketic's representation regarding the property's designation was false.  For that reason, a genuine issue of material fact remains on whether New Century or US Bank justifiably relied on Marketic's declaration that the land was not designated for agricultural use.  *See Lone Star Machine Corp. v. Frankel*, 564 S.W.2d 135, 139 (Tex.App.–Beaumont 1978, no writ) (finding that plaintiff was on notice of defendant's fraud in connection with the purchase of a home because documentary specifications for the home revealed that defendant's representations were false).  Because a genuine issue of material fact remains on whether Defendant justifiably relied on Plaintiff's representation, it is not entitled to summary judgment on its counterclaim for common law fraud.

## I.      US Bank's Counterclaim for Statutory Fraud

Defendant has moved for summary judgment on its counterclaim for statutory fraud.  Section 27.01 of the Texas Business and Commerce Code provides a statutory cause of action for those aggrieved by "fraud in a transaction involving real estate" – i.e., when a false representation or a false promise induces the defrauded party to enter into a real estate contract.  Tex. Bus. & Com.

Code §§27.01(a)-(b).

After reviewing the applicable law, the Court denies Defendant's motion for summary judgment on its counterclaim for statutory fraud.  It is well established that a cause of action for statutory fraud does not arise from a transaction between a mortgagor and a mortgagee because such a transaction does not involve the sale or transfer of real estate from one party to another.  *See Grant-Brooks*, 2004 WL 1194462 *4-5; *Texas Commerce Bank Reagan v. Lebco Constrs., Inc.*, 865 S.W.2d 68, 82 (Tex.App.-Corpus Christi 1993, writ denied), *overruled on other grounds by Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 530 (Tex. 1998).  "Section 27.01 only applies to misrepresentations of material fact made to induce another to enter into a contract for the sale of land or stock.  A loan transaction, even if secured by land, is not considered to come under the statute." *Burleson State Bank v. Plunkett*, 27 S.W.3d 605, 611 (Tex.App.–Waco 2000, pet. denied) (citation omitted).  Accordingly, Defendant's counterclaim fails as a matter of law.

## III. CONCLUSION

For the reasons stated above, the Court enters the following rulings:

1.    Defendant's Motion for Summary Judgment on Plaintiff's challenge to the home equity lien pursuant to §50(a)(6)(E) of Article XVI of the Texas constitution is **GRANTED**;

2.    Defendant's Motion for Summary Judgment on Plaintiff's challenge to the home equity lien pursuant to §50(a)(6)(I) of Article XVI of the Texas constitution is **DENIED**;

3.    Defendant's Motion for Summary Judgment on Plaintiff's breach of contract claim is **DENIED**;

4.    Defendant's Motion for Summary Judgment on Plaintiff's claim under the Texas Debt Collection Act is **DENIED**;

5.    Defendant's Motion for Summary Judgment on Plaintiff's claim under the federal Fair Credit Billing Act is **GRANTED**;

6.    Defendant's Motion for Summary Judgment on Plaintiff's claim under the Texas Deceptive Trade Practices Act is **GRANTED**;

7.    Defendant's Motion for Summary Judgment on Plaintiff's claim for Constructive Fraud is **GRANTED**;

8.    Defendant's Motion for Summary Judgment on its counterclaim for common law fraud is **DENIED**; and

9.    Defendant's Motion for Summary Judgment on its counterclaim for statutory fraud is **DENIED**.

**It is so ORDERED.**

**SIGNED: June 15, 2006**

_____

**HON. JERRY BUCHMEYER**
**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**